**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RICHARD J. MORIARTY,** *et al.*, | ) | **CASE NO. 08 CV 2180** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **EQUISEARCH SERVICES, INC.,** | ) | **Memorandum of Opinion and Order** |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### INTRODUCTION

This matter is before the Court upon plaintiffs' Motion to Remand to Probate Division of Cuyahoga County Common Pleas Court (Doc. 5). The case arises out of a contract for the recovery of previously lost assets. For the reasons that follow, plaintiffs' Motion to Remand is DENIED.

### FACTS

Plaintiff Richard J. Moriarty brings this action in his individual capacity as well as in his capacity as executor of the estate of Dorothy Carey and trustee of the Dorothy O. Carey

Trust (the "Carey Trust").  The Carey Trust is the sole beneficiary of the residue of Ms. Carey's estate.  Defendants are Equisearch Services, Inc., Equisearch Acquisition, Inc. and Lee Rothman, an employee of Equisearch Services.  Plaintiffs are citizens of Ohio.  Defendants are all citizens of New York.  Plaintiffs initiated this action in the Probate Division of the Cuyahoga County Court of Common Pleas (the "Probate Court").  Defendants then removed the action to this Court.

Ms. Carey passed away in 2003.  Her estate was probated and closed in May 2006.  Plaintiffs' Complaint states that "this action concerns the administration of the property rights and interests of the Estate of Dorothy Carey ... and it concerns the direction and control of the conduct by fiduciaries ...  Also, it concerns a claim of concealment of assets (R.C. 2109.50) and approval of the fairness of a third-party agreement (R.C. 2109.361)."  The Complaint further states that "this action concerns the property, rights and interests of the beneficiaries of two inter vivos trusts, the Dorothy O. Carey Trust dated October 23, 1991, and the Perma Seating Company Retirement Trust (the "Perma Trust"), and the acts, duties and responsibilities of the trustees of said trusts."

The Perma Trust was funded by an annuity payment through the Principal Financial Group, Inc. ("PFG").  Ms. Carey was the ultimate beneficiary of these payments.  Plaintiffs allege that the trustee of the Perma Trust failed to update the mailing address for the Perma Trust.  As a result, several dividend payments for the years 2002-2006 were delivered to the wrong address.  Those checks were never recovered or cashed.  Plaintiffs state that the Carey Trust is now entitled to these payments.

In 2007, defendant Rothman contacted plaintiff Moriarty as the statutory agent for the

Perma Seating Company. Rothman indicated he had found assets of the Perma Trust - presumably the dividend payments for 2002-2006 - and was willing to disclose the location of those assets for a 25% recovery fee. Equisearch and the Perma Trust then entered into an Agreement for Asset Location (the "Agreement"). Moriarty executed the Agreement on June 8, 2007 as "trustee" for the Perma Trust.[1] The Agreement provides in relevant part that:

> Equisearch has rendered investigatory and research services for OWNER [defined in the Agreement as the Perma Trust] with respect to the recovery of an asset belonging to OWNER and that Equisearch has provided assistance to OWNER and will continue to assist OWNER with respect to the recovery of the asset for OWNER.
> ***
> Equisearch will receive a fee of 25% from OWNER based on the gross value of the asset recovered for OWNER through services rendered by Equisearch. ... Only Equisearch will recover the asset. ... Equisearch will make a diligent effort to locate other unclaimed assets for OWNER [and] Equisearch will be responsible for all expenses necessary and incidental to the recovery and return of asset to OWNER.
> ***
> The laws of the State of New York will govern with respect to all aspects of this agreement.

The Agreement was fully performed by the parties. The asset was disclosed to the Perma Trust and the trust, in turn, paid the finder's fee to defendants. Plaintiffs filed a Motion to Reopen the Carey Estate with the Probate Court on August 16, 2007, presumably to probate the asset recovered pursuant to the Agreement. The asset was paid in September 2007. The present action was initiated on August 8, 2008. It appears that the estate remains open.

Plaintiffs' Complaint alleges that the above-quoted statements in the Agreement "were

---

[1] 
> Moriarty is not and has never been the trustee of the Perma Trust. At the time the Agreement was executed, no trustee was in place; the original trustee for the Perma Trust had since passed away.

and are materially false, misleading and deceitful, and failed to truthfully or accurately represent the nature of the transaction which Defendants Equisearch and Rothman then knew to be the case, and Defendants knew these to be false and misleading when they made them to Plaintiffs." Plaintiffs charge that "Defendants had a secret, undisclosed contractual arrangement with ComputerShare Investor Services, the transfer agent for PFG, to find PFG shareholders entitled to receipt of as well as the financial benefits of their shares in PFG." Plaintiffs argue that defendants had a duty to disclose their relationship with ComputerShare and that their failure to do so resulted in negligent misrepresentation or constructive fraud.

Plaintiffs' Complaint states six claims for relief: (1) declaratory judgment that the Agreement is void or voidable or unenforceable; (2) fraud, constructive fraud and misrepresentation; (3) reformation or rescission of contract; (4) breach of contract; (5) negligence and negligent misrepresentation; and (6) appointment of plaintiff as trustee to the Perma Trust.

Plaintiffs now move to remand. The motion is opposed.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 1447(c), a case originally filed in a state court must be remanded if, at any time before trial, it appears that the federal district court to which it was removed lacks subject matter jurisdiction. *Coyne ex rel. Ohio v. Am. Tobacco Co.,* 183 F.3d 488, 496-97 (6th Cir. 1999) ("in a removed action, upon determination that a federal court lacks jurisdiction, remand to state court is mandatory ..."). The determination of federal jurisdiction in a diversity case is made as of the time of removal. *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). The party seeking removal bears the burden

of showing that proper subject matter jurisdiction exists. *Id.* at 453-54. "The district court must resolve all disputed questions of fact and ambiguities in the controlling ... state law in favor of the non removing party." *Coyne*, 183 F.3d at 493 (internal quotations omitted). "All doubts as to the propriety of removal are resolved in favor of remand." *Id.*

## **DISCUSSION**

Defendants removed this action on grounds of diversity of citizenship and amount in controversy. Under 28 U.S.C. § 1332, "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." Plaintiffs argue that the Probate Court has exclusive jurisdiction pursuant to certain Ohio statues. In the alternative, plaintiffs argue that the Court should abstain from exercising subject matter jurisdiction under the doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971).

**A.     Exclusive Jurisdiction of the Probate Court**

Plaintiffs rely on the following statutory provisions in support of their argument that the Probate Court has exclusive jurisdiction over the present dispute:

> (A)(1) Except as otherwise provided by law, the probate court has exclusive jurisdiction:
> \*\*\*
> (c) To direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates;
> \*\*\*
> (l) To render declaratory judgments, including, but not limited to, those rendered pursuant to section 2107.084 of the Revised Code;
>
> (m) To direct and control the conduct of fiduciaries and settle their accounts;
> \*\*\*
> (C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless

5

> the power is expressly otherwise limited or denied by a section of the Revised Code.

Ohio Rev. Code § 2101.24.

"The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court." *Lepard v. NBD Bank*, 384 F.3d 232, 237 (6th Cir. 2004). The present dispute is a straightforward contract dispute. This is not a proceeding in which the Probate Court must "direct and control the conduct" of the executor or trustee of the Carey Trust. Such a finding would turn the jurisdictional statute cited above on its head. The conduct in question here is not the conduct of plaintiff as executor or trustee of the Carey Trust; none of the plaintiffs is charging that the executor or trustee of the Carey Trust acted improperly.[2] The conduct in question is that of defendants. None of the cases relied upon by plaintiffs supports their claim that exclusive jurisdiction lies with the Probate Court.

The Court finds that it possesses subject matter jurisdiction over the present Complaint.

**B.     Abstention under *Younger***

In *Younger v. Harris*, Mr. Harris had been charged with a crime and was being prosecuted in state court. *Younger v. Harris*, 401 U.S. 37 (1971). He filed a suit in federal court seeking to enjoin the state prosecutor from proceeding with the case against him arguing the prosecution would violate his right to free speech under the First and Fourteenth

---

[2]
> Of course plaintiff Moriarty (as executor or trustee of the Carey Trust) has not sued himself (as the one who executed the Agreement) for misconduct in executing the Agreement and agreeing to pay the 25% finder's fee.

6

Amendments to the United States Constitution. The district court issued the injunction against the state prosecutor. The Supreme Court reversed stating that the decision was "a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." In so holding, the Supreme Court relied on a federal statute that provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

The *Younger* doctrine is grounded in the idea of "comity."

> [T]hat is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Younger*, 401 U.S. at 44. This principle of comity

> mandates application of *Younger* abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government.

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). Plaintiffs assert that the State's interests in this case are of such importance. The Court disagrees.

Further, plaintiffs do not argue that the Probate Court would need to be enjoined from acting if this Court exercises its jurisdiction. In fact, it is not clear that there is anything for the Probate Court to do at this point. Simply put, the *Younger* doctrine does not apply.

**CONCLUSION**

For the foregoing reasons, plaintiffs' Motion to Remand is DENIED.

IT IS SO ORDERED.

        /s/ Patricia A. Gaughan
        PATRICIA A. GAUGHAN
        United States District Judge

Dated: 11/13/08