UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Richard J. Moriarty, et al., | ) | CASE NO. 08 CV 2180 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Equisearch Services, Inc., et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Principal Financial Group, Inc.'s Motion to Disqualify Plaintiffs' Counsel (Doc. 53).  This is a breach of contract action.  For the reasons that follow, the motion is DENIED.

**FACTS**

Plaintiff, Richard J. Moriarty, filed this lawsuit in his capacity as Executor of the Estate of Dorothy Carey, Trustee of the Dorothy Carey and Milburn Carey trusts, and on his own behalf, against defendants, Equisearch Services, Inc., Equisearch Acquisition, Inc., Lee Rothman, Principal Financial Group, Inc. ("PFG"), and Compuershare Investor Services, LLC.

1

Dorothy and Milburn Carey owned and operated the Perma Seating Company. In the early 1980s, the Careys wound up the business and liquidated its assets. In conjunction with the liquidation, the Perma Seating Company Trust ("Perma Trust") purchased an annuity from PFG's predecessor. According to the complaint, the trustee named for the Perma Trust was an agent of PFG's predecessor.

In October of 2001, PFG's predecessor was demutualized and PFG was formed. Thus, annuitants were offered cash or shares in PFG in exchange for their annuity holdings. Plaintiffs allege that PFG, through its agent, failed to update the mailing address for the Perma Trust. Accordingly, notice of the offering was not sent to the annuity holders. Further, several dividend payments were delivered to the wrong address and those checks were never recovered or cashed.

In late 2003, Dorothy Carey died. In 2004, Moriarty, as executor of her estate, contacted PFG to inquire as to whether any death benefits were available to the estate. PFG indicated that no assets were available.

In 2007, defendant Rothman contacted plaintiff Moriarty as the statutory agent for the Perma Seating Company. Rothman indicated he had found assets of the Perma Seating Company and was willing to disclose the location of those assets for a 25% recovery fee. Equisearch and plaintiff, as trustee for the Carey trusts[1], entered into an agreement, (the "Agreement"), which provides in relevant part,

> Equisearch has rendered investigatory and research services for OWNER [defined in the Agreement as the Perma Trust] with respect to the recovery of an asset belonging to OWNER and that Equisearch has provided assistance to OWNER and will continue to assist

---

[1] Moriarty is not and has never been the trustee of the Perma Trust. At the time the Agreement was executed, no trustee was in place.

2

> OWNER with respect to the recovery of the asset for OWNER.
>
> ***
>
> Equisearch will receive a fee of 25% from OWNER based on the gross value of the asset recovered for OWNER through services rendered by Equisearch. ... Only Equisearch will recover the asset. ... Equisearch will make a diligent effort to locate other unclaimed assets for OWNER [and] Equisearch will be responsible for all expenses necessary and incidental to the recovery and return of asset to OWNER.
>
> ***
>
> The laws of the State of New York will govern with respect to all aspects of this agreement.

The Agreement was fully performed by the parties. The asset was disclosed to the Perma Trust and the trust, in turn, paid the finder's fee to defendants. It appears that during the time the parties negotiated the Agreement, the value of the stock fell.

Plaintiffs now seek recovery of the finders' fee paid, as well as the loss in market value that occurred as a result of the delay in turning over the assets.

Plaintiffs are currently represented by Edgar H. Boles. Mr. Boles is a partner in the law firm Moriarity and Jaros. Mr. Moriarity was a partner in this law firm during the time he entered into the Agreement on behalf of the Carey trusts. It appears he may still be a partner in the firm.

Plaintiffs' amended complaint contains seven claims for relief: (1) breach of contract; (2) declaratory judgment; (3) fraud, constructive fraud and misrepresentation; (4) reformation or rescission of contract; (5) a second claim for breach of contract; (6) negligence and negligent misrepresentation; and (7) appointment of plaintiff as trustee to the Perma Trust.

Defendant PFG moves to disqualify plaintiffs' counsel. Plaintiffs oppose the motion.

**DISCUSSION**

3

Defendant argues that disqualification is warranted because counsel has a conflict of interest.  According to defendant, Moriarty "may have been" comparatively negligent in various ways.  For example, and not by way of limitation, defendant argues that Moriarty, as executor, may have failed to locate all of the estate's assets, erroneously entered into the asset agreement, and failed to negotiate Equisearch's fee.  As such, the entire firm of Moriarty & Jaros should be disqualified.  In response, plaintiffs argue that defendant lacks standing to seek disqualification.  In addition, plaintiffs argue that defendant waited over five months to file its motion.  Plaintiffs further argue that no malpractice occurred and that the fact that defendant may assert a "defense" of malpractice does not create a conflict of interest.

Courts have broad discretion in ruling on motions to disqualify.  *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 738 F.Supp. 1121, 1124 (N.D. Ohio 1990).  When faced with a request for disqualification, a "delicate balance must be struck between two competing considerations: the prerogative of a party to proceed with counsel of its choice and the need to uphold ethical conduct in courts of law."  *Id*. at 1126 (*citing Panduit Corp. v. All States Plastics Mfg. Co.*, 744 F.2d 1564, 1577 (Fed Cir. 1984); *Schiessle v. Stephens*, 717 F.2d 417, 420 (7 th Cir. 1983)).

While motions to disqualify may be legitimate and necessary under certain circumstances, they "should be viewed with extreme caution for they can be misused as techniques of harassment."  *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 ( 7th Cir. 1982).  Disqualification is a drastic measure which should not be imposed unless absolutely necessary.  *Gould*, 738 F.Supp. at 1124-25.  Ohio courts have held that a litigant's right to "select counsel of choice should be limited only when representation poses a significant

4

risk of a violation of the Canons of the Code of Professional Responsibility." *Henry Filters, Inc. v. Peabody Barnes, Inc.*, 611 N.E.2d 873, 875 (Ohio App. 6th Dist. 1992).

According to defendant, Rule 3.7 of the Ohio Rules of Professional Responsibility warrants disqualification of plaintiff's counsel. That rule provides,

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in a case;
> >
> > (3) the disqualification of the lawyer participating in a case would work substantial hardship on the client.
>
> (b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or 1.9.
>
> In turn, Rule 1.7 provides, in relevant part,
>
> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a *significant* risk that the representation of one or more clients will be *materially* limited by...a personal interest of the lawyer.

Upon review, the Court concludes that, regardless of whether defendant possesses standing to assert this motion, defendant fails to establish that disqualification is required in this matter. At the very best, defendant points out the *potential* for a malpractice action. According to defendant's version of the facts, Moriarty failed in some regard to locate the assets of the Carey estates. Defendant, however, appears to recognize that Moriarty was not the trustee for

5

Perma Trust.  Thus, it is far from clear that Moriarty was under some legal duty to maintain information regarding this separate legal entity.  Regardless, plaintiffs dispute that any malpractice claim exists.  Simply put, the Court finds that defendant fails to identify an actual conflict that poses a significant risk that any personal interest will materially limit Edgar Boles's representation of the plaintiffs.

### CONCLUSION

For the foregoing reasons, Defendant Principal Financial Group, Inc.'s Motion to Disqualify Plaintiffs' Counsel is DENIED.

IT IS SO ORDERED.

                                        /s/ Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
                                        United States District Judge

Dated: 7/28/09